ROBERT PATTON, Ex'r, *v.* J. A. HUNT, and others.

There is a difference between the plea of *tender* in actions for *money*, and the like plea in actions for the non-delivery of *specific articles;* in the latter case no averment of *continued readiness*, or of *profert*, is necessary,—*because*, by the tender the articles became the property of the party to whom it is made, and if subsequently they be *converted* by him who made it, he is responsible for their value when converted.

In case of *tender* of *specific articles*, under a contract to deliver them, they must be *separated* from others of the same sort, so as to be capable of identification, as upon a sale.

Where the question raised by the appeal, is, whether there be *any evidence, &c.*, it will be taken for granted that the record sent up contains the whole of the evidence bearing upon the point.

*Damages* for not fulfilling a contract, that was to have been performed in October 1865, may be estimated in currency, and need not at first be estimated in gold and then adding depreciation. (*Lackey* v. *Miller*, Phil. 26, *Powell* v. *Hill, Post* 169, cited and approved.)

COVENANT, tried before *Mitchell, J.*, at Spring Term 1869 of BURKE Court.

The action was brought upon the following note:

.$1,330 39.   Twelve months after date, we, or either of us, promise to pay Robert Patton, Exr. of John Warlick, dec'd, the sum of thirteen hundred and thirty dollars and thirty nine cents, in good current bank notes on the banks

of North or South Carolina, for value received, this the 31st of October 1864.

J. A. HUNT,     [Seal.]

WM. F. McKESSON, [Seal.]

On the day that the note fell due an agent of the defendants, meeting with the plaintiff, made known to him that he was sent to pay the above note, in South Carolina bank bills; and at the time, he had such notes in his possession. The plaintiff refused then to accept them, but said, if his counsel advised him to do so, he would. Nothing further, then or afterwards, was said or done in regard to payment of the note ; no tender or payment of any bank notes or money in pursuance of such tender, was made in Court.

The Court instructed the jury that this offer of payment by defendant's agent, did not bar the plaintiff's recovery ; that the plaintiff had no right to claim the value of $1,330 39 in the equivalent of specie, but the value of that numerical amount of notes in genuine, current bank notes on the banks of North or South Carolina in specie, at the day when the note fell due, and that in their verdict it would be proper to add the premium on gold at that time, and render their verdict in *legal tender*, with lawful interest.

The counsel for the defendants excepted to the charge :

1. The bank bills tendered by the defendant's agent to the plaintiff were specific articles, and being offered as such when the note fell due, were a full discharge of the covenant; and that the plaintiff thereafter could not recover principal or interest thereon.

2. The Court should have instructed the jury to find that the defendants had complied with their agreement to pay the note declared on, and that the plaintiff should not have recovered the value of the bills specified in said note, in gold, with the premium in Federal currency added, with interest ; and that the tender being made as stipulated, it was not necessary that the bank-bills, after being tendered, should be paid into Court.

Verdict for the plaintiff, for $663 70 ; Rule for a new trial; Rule discharged ; Judgment, and Appeal.

*Folk* and *F. H. Busbee,* for the appellants, cited 2 Pars. on Contracts, 165, note 3 ; 2 Kent 665; *Fort* v. *Bank of Cape Fear,* Phil. 417 ; *Lacky* v. *Miller,* Phil. 26.

*Battle & Sons, contra.*

RODMAN, J. This is an action of Covenant, brought on the obligation of the defendants to deliver to the plaintiff, twelve months after the 31st of October 1864, a certain sum, in good current bank notes on banks in North and South Carolina, for value received. The defendants pleaded a tender of such notes to the plaintiff on the day, and a refusal by him to accept, but did not aver a continued readiness, or make a *profert* in Court. Upon the tender, the case states that the agent of the defendants met the plaintiff, and told him "that he was sent to pay the obligation in South Carolina bank bills, and that at the time, he had such notes in his possession," and the plaintiff then refused to accept them. The Judge instructed the jury, that the offer of payment did not bar the plaintiff's recovery. We do not know whether this instruction was given under an opinion that what was done was insufficient as a tender, or that any tender would be insufficient unless the plea averred a continuing readiness, and was accompanied by a *profert.* If the alleged tender was insufficient in either point of view, the Judge committed no error, and we are compelled therefore somewhat to consider both questions. There appears to be a material difference between a plea of tender in an action on a contract to pay money, and one on a contract to deliver specific articles. The first must aver a continued readiness to pay, and bring the money into Court. But the contract in this case must be held to be for the delivery of specific articles. Neither when it was made, nor when it became due, were bank bills money : a note payable in them is not

negotiable, nor can an action of debt be maintained on it: *Lacky* v. *Miller*, Phil. 26.

The authorities to which we were referred by the counsel in an action for the non-delivery of specific articles, may be for the defendants, sustain their position, that a plea of tender sufficient, without an averment of continued readiness and without a *profert*. In 2 *Pars. Cont.* 164: "If by the terms of the contract, certain specific articles are to be delivered at a certain time and place, in payment of an existing debt, this contract is fully discharged, and the debt is paid, by a *complete and legal tender* of the articles, at the time and place, although the promisee was not there to receive them, and no action can thereafter be maintained on the contract, but the property in the goods has passed to the creditor." At p. 167, he says "whenever a tender would discharge the contract, it must be so complete and perfect as to vest the property in the promisee, and give him, instead of the *jus ad rem* which he loses, an absolute *jus in re*." The articles must be separated so as to be capable of identification as on a sale. A tender of one sheep, in a flock of several, or of ten bushels of grain, in a bulk of more, would be insufficient: *Powell* v. *Hill* decided at this term.

In our opinion, the doctrine thus stated by Parsons, rests on sound reasons of justice and convenience. A promisee should not be allowed, by a wrongful refusal to accept the articles for whose delivery he has contracted, to throw on the promisor the burden of contining to keep them at his own expense and risk. In some cases, it has been held that after a refusal to accept, the promisor may throw the goods upon the ground, and be no longer liable for them. However this may be, if he keeps them it is as the bailee of the promisee, who is regarded as the owner; if he converts them to his own use, he is liable for their value at the time of such conversion. His situation is certainly different from that of a promisor bound to deliver at all events.

The statement in this case is so vague, that it is impossi-

ble to say what was the character of the alleged tender.

It does not appear whether the bills tendered were in a separate parcel, or mixed with others of the same kind, so as not to be distinguishable. In the former case the tender would be good, because thereby the plaintiff acquired, notwithstanding his refusal, a title to the bills; in the latter case it would be insufficient. The Judge, by his instruction, in effect, says that there is no evidence from which a jury could reasonably infer the complete tender which was requisite to discharge the contract. In a case where the question is whether there was any evidence of a given state of facts, we must understand the Judge as setting out in the case the whole evidence bearing on that point, and we think from the statement, vague as it is, 'that the agent had in his possession *such bills*,' a jury *might* infer that they were such, both in kind and amount, as would just satisfy the contract, and no more, and consequently, were specific and capable of transfer to the plaintiff, all other specification being waived by his refusal to accept. We adopt this view the more readily, because it seems to us that upon the trial below, the importance of the matter in question was not clearly seen, and probably, that on another the facts will be more fully exhibited.

This view supersedes the necessity of expressing any opinion on the other questions raised by the exceptions. It may be remarked however that no reason can be seen why damages arising out of a breach of contract for the delivery of goods in 1865, should not be estimated directly in legal currency, without resorting to the circuitous process of first estimating them in gold and then adding the depreciation.

There must be a *venire de novo*. Let this opinion be certified.

PER CURIAM.                                   *Venire de novo.*