JOHN C. TERRELL, Assignee, v. J. W. WALKER and others.

When a debtor tenders money in payment of his debt to the creditor, who says he has no use for it, and thereupon the debtor concludes to retain the money awhile longer and does so, he thereby waives the tender.

To make a tender effectual, the debtor must be ready, willing and able to pay, and must so inform his creditor and must also produce the money, unless such production be waived by the absolute refusal by the creditor to receive it.

A note given for money borrowed during the late war was, by force of the Acts of 1866, chs. 38 and 39 and the Act, 1865, presumptively payable in Confederate money in the absence of any evidence to rebut it, yet the Acts did not so far interfere with the contract as to change it into one for the delivery of specific articles; it is still to be treated as a money contract, solvable in money, and not in specific goods.

A tender of Confederate Treasury notes in payment of a debt solvable in such notes, will not, upon the refusal to receive them, vest in the creditor the property in any certain Confederate notes, so that by virtue of such ownership, he will become liable to their depreciation. But, such tender will prevent the recovery of interest after that time.

If a creditor cause his debtor to desist from making a tender in payment of a note at a particular time in the Confederate currency in which it was then solvable, by a promise that he will receive it at a future time, and then refuses to receive it, it will not be such a fraud (if a fraud at all) for which damages would be allowed to defeat the action on the note, or be used, as a set off or recoupment.

The cases of *Patton* v. *Hunt*, 64 N. C. Rep. 163, and *Mingus* v. *Pritchett*, 3 Dev. Rep. 78, cited and approved.

This was an action of debt tried before his Honor, *Tourgee, J.*, at the Spring Term, 1870, of the Superior Court for the County of PERSON. The suit was upon a promissory note made by the defendants, Walker & Co., to the defendants, Wade & Co., for the sum therein mentioned, dated 24th July, 1862, with interest from the 16th July, 1862, and assigned to the plaintiff in April, 1867. The defendants pleaded, payment, set off, tender and refusal, and the statutes for scaling debts solvable in Confederate currency.

It was proved that the note sued on was given for one which Wade & Co. had theretofore given to the plaintiff for money lent, all of which was in Confederate money, except about fifty dollars in North Carolina bank notes. In March, 1863, the defendants, Walker & Co., offered to pay the sum due the plaintiff, informing him that they had the amount in their safe at that time. The sum offered was in Confederate currency, and the plaintiff objected to taking it then, but said he would do so in the ensuing Fall, and thereupon the defendants, Walker & Co., concluded to retain the money for awhile longer and did so. In September, 1863, one of defendants of Walker & Co., having in his possession and upon his person the amount of said note in Confederate currency, met the plaintiff in the street and told him that he wanted to pay off the note, to which plaintiff replied, "that note will be among my papers at the close of the war." The Confederate money was not produced nor shown to the plaintiff at this time. The witness, who proved the above, said he had the same amount in Court at the time of the trial, but there was no evidence that it was the identical package which he had on his person at the time of his conversation with the plaintiff.

His Honor instructed the jury that there was no evidence to prove a tender either in March or September, 1863, and that the plaintiff was entitled to recover the amount of the note with interest from its date according to the scale of depreciation at that date.

The defendants' counsel asked the Court to instruct the jury that if they believed that the plaintiff had evaded the offer of payment in March, 1863, by a promise to receive the Confederate money in the Fall of that year, and thereby relaxed the efforts of the defendants in providing otherwise for the payment of the note, and in the Fall, refused to accept said currency, it was fraud on his part, which entitled the defendants to the application of the scale of the said

currency established for said currency. The Court refused. the instruction. First, because there was no evidence to, show that the plaintiff had agreed to accept such currency in payment of the note. Secondly, because the plaintiff was, not originally a party to the note, and no fraud on his part. could affect the time at which the scale should be applied. Thirdly, because fraud could not be enquired into in this. form of action.

The jury returned a verdict in favor of the plaintiff in. accordance with the instruction of the Court, upon which a, judgment was rendered, and the defendants appealed.

*W. A. Graham*, for the defendants.

*Phillips & Merrimon* and *Fowle & Badger*, for the plaintiffs..

RODMAN, J. The note sued on was made by Walker &. Co. to Wade & Co., on 24th July, 1862; the consideration was Confederate money loaned by Wade & Co. to Walker & Co., which the former held as the agent of the plaintiff. We see nothing in the circumstances attending the making of the note to prevent a recovery by the plaintiff according to the legislative scale for Confederate currency of July, 1862. Even if there were no evidence (as we think there was) tending to show an agreement by the plaintiff, personally, or by his agent Wade, to receive Confederate money, yet the Act of 1866 creates such a presumption when the consideration was a loan of such money, and there is nothing. in evidence to repel it. Acts 1866, ch. 38, ch. 39, also Act 1865.

The defendants contended that Walker & Co. tendered payment to the plaintiff in March, 1863, which he refused. We do not think the evidence on this point sufficient to. prove a tender at that time. Walker offered to pay the note and had the ability to do so, which would have been under the circumstances a sufficient tender, but when the

plaintiff said that he would have no use for the money until the fall, when he would receive it, Walker assented to the delay; in the language of the case, he "thereupon concluded to retain the money awhile longer, and did so." We think this was a clear waiver of the previous tender.

The defendants contend that a tender was proved in September, 1863, and in this we agree with them. The substance of a tender is that a debtor should be ready and willing and able to pay, and so inform his creditor, and also produce the money, unless the production be waived as it was on this occasion by an absolute refusal to receive it. But what was the effect of this tender? To stop the interest, it is admitted. 2 Pars. Cont. 639. But the defendants contend that it should have either been considered as simply a tender, or when taken in connection with the consideration, that the refusal was a breach of the defendants promise, made in the previous March, which the defendants say was a fraudulent one, made with the intent to deceive; the further effect either to defeat the recovery of the plaintiff altogether, or to throw on the plaintiff the loss from the subsequent depreciation of the Confederate money. We cannot see how in either aspect it can have that effect. First, as simply a tender, it cannot have the effect of making the money tendered the property of the creditor so as to impose on him the burden of its subsequent depreciation. That result only follows a tender when the contract is to deliver certain goods at a certain time and place, in which case it is held that a tender vests the property in the goods in the vendee. *Patton* v. *Hunt*, 64 N. C. 163. *Mingus* v. *Pritchett*, 3 Dev. 78.

In this case the note was to pay money: and although by the Act of 1866 it was presumptively solvable in Confederate Treasury notes, yet the act did not so far interfere with the contract as to change it into one for the delivery of specific articles; it is still to be treated as a money contract, solvable

in money, and not in specific goods. 2 Pars. Cont. 638. Second. Assuming, according to the defendant's contention, (which we do only for the sake of the argument,) that the plaintiff's promise in March to receive Confederate money in the fall was a fraud for which damages could be recovered; or was a contract for the breach of which damages could be recovered; it was not a contract which equity would specifically enforce, and we do not see how unliquidated damages could be set off, or recouped in any way in this action on the note. Further, upon what principle would the damages be assessed? The defendants, Walker & Co., used, or might have used, the money they proposed to tender, and may have made a profit on it. Will it be said that they would be liable for such profit to the plaintiff? The proposition of the defendants assumes that the tender which they made and afterwards waived in March, had the effect to vest in the plaintiff the property in some certain Confederate notes, by virtue of which ownership he became liable to their depreciation. We do not think this view can be sustained.

I have omitted to notice the fact that neither in March or in September, 1863, was the plaintiff the legal holder of the note declared on. We consider that of no importance, as it was held by Wade as his agent under a contract known to, and acted on, by all the parties.

We have also omitted to notice, that a plea of tender is incomplete unless accompanied by a payment of the sum tendered into Court; because that objection was not made by the plaintiff, and perhaps, also, the doctrine would be inapplicable in a case like this.

We think the Judge should have told the jury that the plaintiff was entitled to recover the value of the principal of the note with interest from 16th July, 1862, to the date of the tender in September, 1863, assessed according to the legislative scale.

There was error. Judgment reversed, and *venire de novo.*
Let this be certified.