ALICE PEARSON and others *v.* RICHARD A. CALDWELL.

The presiding Judge, under the old Equity practice, might or might not submit issues to a jury, as he saw fit; and might sustain or disregard the finding of the jury on such issues as he thought best.

A guardian who, in 1862, exchanged North Carolina six *per cent.* bonds for North Carolina eights, when his wards were of full age, and afterwards received the semi-annual interest on such bonds, and gave the guardian their receipt for the same when the bonds were turned over to them, is not responsible for the same, though they were lost by the results of the war.

(*Gibbs* v. *Gibbs*, Phill. 471, cited, approved and distinguished from this.)

CIVIL ACTION, tried at the August (Special) Term, 1873, of the Superior Court of ROWAN county, by his Honor, *Judge Albertson.*

The suit was originally commenced by bill, in 1866, in the former Court of Equity for Rowan county, and thence regularly transferred.

Upon the hearing, his Honor being of opinion with the defendant, dismissed the action. From this judgment plaintiffs appealed.

The facts are stated in the opinion of Justice RODMAN.

*J. H. Wilson,* for appellants.
*Fowle,* contra.

RODMAN, J. Before considering this case on its merits, it

will be proper to notice a point made by the counsel for the plaintiffs, who contended that there was error in the judgment because the Judge did not submit issues of fact to a jury, but decided them himself. The action was a bill in equity begun in 1866. In 1870, on motion of defendant, the Judge ordered that the issues of fact be submitted to a jury, but this does not appear to have been done. Under the old system it is clear, that in an equity case the Judge was not bound to submit issues to a jury, and if he did he might disregard their finding. This case being governed by the former practice, we think the Judge committed no error in disregarding the order he had made for a jury, and in trying the issues himself.

The case, as stated by the Judge, is substantially this. In May, 1858, the defendant became guardian of Sophia, Alice, Charles, and John Pearson, infants. He received notes and money belonging to them and soon after his appointment, purchased for them four six per cent. bonds of the State of North Carolina, of the par value of $1,000 cash, amounting to $4,000. No complaint is made of this investment.

In September or December, 1862, the defendant exchanged these bonds for North Carolina eight per cent. bonds issued during the war, to a like amount. These bonds, of course, become worthless by subsequent events.

The several wards become of age as follows : Sophia in 1858 ; Alice in 1860 ; Charles in 1862 ; but whether before or after the exchange of bonds above spoken of, does not appear.

John died in 1864, being still an infant.

Before proceeding to the facts which constitute the remaining part of the defence, it will be convenient to pause here and inquire whether the defendant had made himself responsible to the plaintiffs, by his dealing with their property.

If at the date of the exchange of the bonds in September, 1862, the defendant had been the guardian of the plaintiffs, inasmuch as he made the exchange in good faith, and it cannot be said to have been grossly, (if at all under the circumstances then existing,) imprudent or injudicious, we should be bound

to hold under many decisions of this Court since 1866, that he did not make himself personally liable for any loss which occurred by means of the exchange.

As John was then an infant, and the defendant was authorized, as his guardian to act for him, he is protected by the principle of our former decisions, from any liability to his representative on that account.

Two (or perhaps three) of defendant's wards, had come of age before the exchange, which we must suppose was known to the defendant. From that moment he ceased to be their guardian, and it was his duty in a reasonable time thereafter, to have put them in possession of their property as he held it at that time. If he retained it, it was not as guardian, but as an agent, constituted such by their acquiescence in his retaining it, to keep for their benefit until a demand, and then to deliver it to them. The defendant's authority not being derived from the law of guardians, is not measured by it. He had no authority but what was given him by his principals. If they gave him no authority to make the exchange, either prior thereto, or by ratification afterwards, he must be held responsible for all the damage resulting from his unauthorized act. This view is supported by the case of *Gibbs* v. *Gibbs*, Phil. Law, 471. In that case, the defendant as guardian of plaintiff, held a note against one Adams who was solvent. About two years after plaintiff come of age, viz: in November, 1863, the defendant collected the note in Confederate money, which he held until it became worthless, and this Court held him liable for the loss.

We consider, then, that as to Sophia and Alice, and perhaps as to Charles, (depending on the date of his becoming of full age) the defendant become liable at the date of the exchange of bonds, for the value of their shares of the six per cent bonds then given up, unless it appears that the exchange was made with their assent, or was subsequently assented to and ratified by them.

We proceed now to consider the remaining question, viz:

whether the plaintiffs, being of full age and *sui juris*, have ever, in a way and under circumstances to make it binding on them, assented to and ratified the exchange, and released the defendant from the consequences of it? It is not alleged that the defendant ever consulted with any of the plaintiffs, or with their mother with whom they lived, respecting the exchange of bonds before the exchange was made. It does appear, however, from the finding of the Judge, that he afterwards informed Mrs. Pearson of it, and that he paid her as agent of the plaintiffs, semi-annually, the interest on the six per cent. bonds while he held them, and the interest on the eight per cent. bonds, after he acquired them, up to March, 1865. It must be inferred from this, that he informed her of the exchange soon after it was made, and she so states in her deposition. The plaintiffs lived with their mother, and she appears to have been their agent to receive their income from the defendant. It can scarcely be doubted, therefore, that the plaintiffs were informed of the exchange soon after it was made. They were then not merely *sui juris*, but of an age which qualified them to judge intelligently of the act and of their rights, and they expressed no dissent, either at the time or afterwards, until shortly before the bringing of this action in 1866, but continued knowingly to recieve the eight per cent. interest until the close of the war.

On the 19th May, 1865, the defendant delivered to Mrs. Elizabeth Pearson the four eight per cent. bonds and then received from Sophia, Alice and Charles (John having previously died) a receipt under their seals in full for what was due them on the estate of their father, Giles Pearson.

The defendant exhibited no account of his guardianship at this time, but no importance can be attached to that, inasmuch as it is not claimed that he then had anything in his hands received as guardian besides these bonds. The Judge finds " that there was no deception or undue means employed to obtain the receipt, and that it was the voluntary act of the plaintiffs."

It cannot be doubted, that if defendant had consulted with plaintiffs (they being of full age) before the exchange of bonds, and they had authorized him to make it, his defence would have been complete. But a subsequent ratification of the act of an agent, differs from a prior authority only in this: it must appear to have been given upon a full knowledge of the facts and circumstances, and without any concealment on the part of the agent. Here there could be no concealment of any fact, for all the facts connected with the bonds of North Carolina were of public notoriety, and if the plaintiffs were not, in fact, advised of them at the time when they were informed that the exchange had been made, they had ample opportunity to be so informed before they executed the release. Possibly if the release stood by itself, although there do not appear to be any suspicious circumstances attending it, yet it might require to be looked at with a certain amount of suspicion, upon the general policy of the law concerning settlements between guardian and ward. But taken in connection with the apparent assent of the plaintiffs to the exchange, continuing for two years or more, we think the release must be allowed to have its full legal effect.

We concur with his Honor that the action must be dismissed.

PER CURIAM.                                    Judgment affirmed.