SAMUEL L. LOVE v. WM. JOHNSTON.

By a levy, the property is vested in the sheriff, and his title is transferred to the purchaser, whether the sale is public or private. If there is any surplus after satisfying the execution, it belongs to the execution debtor, or his proper, legal representative.

A tender of Confederate money in 1863, at its nominal value, in payment of a note due in 1857, is not a legal tender *for any purpose.*

A note given for the balance of the purchase money, at an execution sale, to the legal representative of the execution debtor, stands upon the same footing as other notes due without condition, and no demand for the payment of the same, is necessary before suit.

(*Cowles* v. *Hayes,* 71 N. C. Rep. 230; *Mebane* v. *Mebane,* 66 N. C. Rep. 334; *Biggs* v. *Williams,* Ibid, 427; *Davidson* v. *Elms,* 67 N. C. Rep. 228; *Terrell* v. *Walker,* 65 N. C. Rep. 91; *Ibid,* 66 N. C. Rep. 244; *Wooten* v. *Sherrard,* 68 N. C. Rep. 331; *Bank* v. *Davidson,* 70 N. C. Rep. 118; *Penser* A. *Simpson,* 65 N. C. Rep. 498; *Gibbs* v. *Gibbs,* Phil. 471; *Bryan* v. *Foy,* 69 N. C. Rep. 45; *McKenzie* v. *Culbreth,* 66 N. C. Rep. 534; *Wells* v. *Slnder,* 70 N. C. Rep. 296, cited and approved.)

CIVIL ACTION, to recover the amount of a note alleged to be lost, tried before *Cannon, J.,* at the Spring Term, 1874, of the Superior Court of HAYWOOD county.

On the 21st day of March, 1857, the defendant made the note sued upon, payable to J. R. Love, the testator of the plaintiff, as guardian of one M. J. Commons, a lunatic, for $756.54, J. R. Love continued to be guardian of the said lunatic, until his death in the Fall of 1863. Early in 1864, the plaintiff, Sam'l L. Love, became guardian of said lunatic, and so continued until about two years ago, it being prior to the commencement of this action, when his guardianship ceased. The plaintiff was also one of the executors of J. R. Love, the first guardian of the lunatic, as stated.

During the time he was the guardian of the said lunatic, the plaintiff in his returns to the Probate Court, charged himself with this note, as being the property of his ward. It was also shown by the records of the Probate Court, October 1872, that the plaintiff while guardian, had paid out for his ward, more than the amount due on the note; relying, as he stated, to be re-imbursed from the note. His ward went to Texas during the plaintiff's guardianship, and this note was the only property left in this State, from which the plaintiff could be paid, and he, the plaintiff, had therefore appropriated it for that pur pose. The plaintiff's payments for his ward was explained by no other evidence; nor was there other evidence than that stated, as to the ownership of the note.

The note given by defendant, was for the balance of the purchase money for two slaves, the property of the said M. J. Commons, the said lunatic, sold under the following circumstances, to wit:

Three executions, *fi. fa's.*, were issued against the said lunatic on November 2d and December 2d, 1856, one of which was in the favor of the defendant, Wm. Johnston, the three amounting in the aggregate to $1,113, and were returnable to the Spring Term, 1857, of Haywood Superior Court, which commenced the 23d March, 1857. The *fi. fas.* were then returned with this endorsement on each: "Levied this *fi. fa*, on three negroes; Martha, William and Peter, as the property of the defendant, March 12th, 1857. W. Green, sheriff;" and

on one of them was the following deputation, to-wit: " J. W. Green, Sheriff of Haywood county, depute W. W. Medford, on these papers. March 23d, 1857, W. Green, sheriff." There is no entry on either of said *fi fas*, of any further disposition of said property, nor of any sale or satisfaction. These same entries are on the execution docket of said term.

Writs of *ven. ex.* issued from this, Spring Term, 1857, dated 8th March, 1857, reciting the former levies and returns, and further that the sheriff had not sold for want of time, and directing the sheriff to sell the negroes levied on according to the exigencies of the writ.

The writs of *ven. ex.* were returned to Fall Term, 1857; the one in favor of the defendant being endorsed as follows : " Rec'd my debt and interest, by the purchase of two negroes; Wm. Johnston ; and satisfaction. Plaintiff's receipt filed for his debt and interest. Rec'd my fees and commissions. Pay into office $5.10 : Atto's receipt filed for his fees. W. Green, sheriff." The other writs were returned satisfied and plaintiff's receipt filed. There was no return of sale, nor of satisfaction other than the foregoing. The foregoing entries also appear on the execution docket.

One of the slaves, William, was sold at public action and bid off by the defendant, at the price of $1,051. It did not appear that Martha was sold at public sale; but it was shown that she was taken by defendant at a valuation fixed by two disinterested persons, viz: at $1,000. This was a few days before the sale. The sheriff executed bills of sale for the negroes sold.

The defendant satisfied the judgments upon which the execution issued, and also satisfied some other debts of the said M. J. Common, amounting in all to $1,294; for which sum the sheriff gave him a receipt, reciting that it was received on executions paid by defendant. It is endorsed on this receipt in the defendant, Johnston's handwriting, as follows: " bid $2,037 ; debts $1,294."

The note sued upon for $756.74, was given for balance of

27

purchase money of both of said slaves, after deducting the amount of the judgments, &c.

There was no evidence that the said J. R. Love was ever authorized by any order of the County or Superior Court to sell the property of his ward.

It was also proved, that in the Summer or Fall of 1863, the defendant went into the house of the said J. R. Love, and informed him that he desired then and there to pay the note now in suit; that at the time, he, the defendant, had a large amount of Confederate money with him, which he showed to the witness, but did not show it to J. R. Love. Love replied to this offer to pay; that he did not then have with him the note; that he was unwell, but that he would send the note over to the defendant, at Buncombe Court, in a few weeks. Upon this, the defendant complained that the interest was accumulating; when Love told him, if he did not send the note to Buncombe as promised, the interest thereon would cease from the time of said Buncombe Court. The note was not sent to Buncombe Court, but was retained by J. R. Love until he delivered it to the plaintiff, for safe keeping, shortly before his death.

No proof was made of any demand on the defendant for the payment of the note, before the commencement of this action, except that the defendant paid the plaintiff $376 on the 1st of January, 1867, which was allowed as a payment; and further, that before the institution of this suit, the plaintiff had claimed of the defendant the balance due on this note, as a credit on a certain judgment which he, the defendant, held against the plaintiff and others; but this was not done, for the reason that the parties differed as to the amount then due on said note.

It was insisted for the defendant, that the plaintiff was not the proper owner of the note, and had no right to sue for the same.

That the sales of the negroes, as before related, were not valid execution sales, but private sales by the guardian of said lunatic, without lawful authority; and that the consideration

of the note and the note itself was unlawful, against public policy and therefore void.

That a tender was proved; but whether that is so or not, the agreement that the interest on the note should cease was a a valid agreement, and a sufficient consideration; that by said promise, the defendant was prevented from making a further tender and thereby exposed to loss and inconvenience; that otherwise, Love would be permitted to take advantage of his own wrong.

That after said tender and agreement, a demand was necessary before the bringing of this suit.

The case being submitted to the jury, they found a verdict for the plaintiff. Motion for a new trial; motion overruled. Judgment and appeal by defendant.

*Coleman* and *T. D. Johnson,* for appellant.
*McCorkle & Bailey,* contra.

BYNUM, J.   1. By the levy of the sheriff, the property in the slaves of the debtor was vested in him, and the title he made to the purchaser, whether the sale was public or private, was good, and after satisfying the executions, the overplus of the purchase money was due to J. R. Love, the first guardian of Commons, the debtor ward. If the guardian saw fit to take a note from the purchaser for the overplus instead of the cash, the defendant, for whose ease and favor it was done, cannot object; he got the property and owes the money. If the sheriff committed a breach of his official duty in the manner of the sale, that is a matter between him and others, in which this defendant is no way concerned.

Upon the death of J. R. Love, the first guardian, the present plaintiff was appointed guardian and was also the executor of the first guardian. He received this guardian note from the estate of J. R. Love, his testator, and by returning it as a part of the estate of his ward, he fixed himself with the ownership in his rightful character of guardian. He, therefore, had

the same ownership and right of action upon the note as the first guardian, just as an administrator *de bonis non* can, in his own name, sue upon notes made payable to the first administrator. *Cowles* v. *Hayes*, 71 N. C. Rep., 230.

The cases cited by the counsel of the plaintiff, establish fully, that when the plaintiff became guardian, received the note as such and charged himself with it, he became the trustee of an express trust, and as such, he was the owner of the note, at least for all the purposes of this action. C. C. P. secs. 55, 57. *Mebane* v. *Mebane*, 66 N. C. 334; *Biggs* v. *Williams, Ib.* 427; *Davidson* v. *Elms*, 67 N. C. Rep. 228.

2. The note was executed in 1857, and was therefore, not a Confederate debt. If the tender of payment, had been, in other respects, sufficient, yet as it was made in Confederate money, of the nominal value of the note, it was not a legal tender for any purpose. As this tender was make in "the summer or fall" of 1863, when that currency had become so depreciated as to be a notice to trustees, not to receive it on well secured ante-war debts, had the guardian then received it, he would have violated his trust and incurred the risk of becoming personally liable for the full amount of the note. It was his right and duty, without resorting to any evasive pretexts for so doing, to refuse to receive the Confederate money ; and no vague promise to deliver the note and receive the money, at a future time and place, or on his failure to do so, not to charge interest on the note from that time, was founded on a valid consideration, but was void. *Terrill* v. *Walker*, 65 N. C. Rep. 91; 66 N. C. 244; *Wooten* v. *Sherrard*, 79 N. C. Rep. 334; *Bank* v. *Davidson*, 70 N. C. Rep. 118; *Purser* v. *Simpson*, 65 N. C. 397; *Gibbs* v. *Gibbs*, Phil. 471; *Bryan* v. *Foy*, 69 N. C. Rep. 45; *McKenzie* v. *Culbreth*, 66 N. C. Rep. 534; *Wells* v. *Sluder*, 70 N. C. Rep. 291.

3. It follows, that the note stood upon the same footing as other notes due and without conditions, and that no demand before suit, was necessary. Whether the executors of the first guardian could pay the debts of the ward, by transferring this

note to the plaintiff, who himself was one of these executors and the creditor of the ward ; or whether the plaintiff could apply the note or its proceeds to his own re-imbusement; or whether he could expend more than the income of the ward's estate ; are questions raised and discussed in the brief furnished us by Mr. Coleman, but they are questions which do not arise in this action.   The plaintiff will be accountable to his ward for the proper management of his estate.   The defendant will discharge himself by paying this note, which he justly owes, and the plaintiff and his former ward, can then settle their matters, as they may be advised.

There is no error.

PER CURIAM.                         Judgment affirmed.