## Case No. 897.

### BANK OF NORTH CAROLINA v. DEWEY.

[19 N. B. R. 314.]

District Court, E. D. North Carolina. June 10, 1879.

BANKRUPTCY—VALIDITY OF COMPROMISE.

[If a debtor tenders to his creditor, and the creditor accepts, a sum smaller in amount than the debt as and for satisfaction in full, the debt is discharged.]

[See Henderson v. Moore, 5 Cranch, (9 U. S.) 11; Memphis v. Brown, Case No. 9,415.]

[In bankruptcy.] Application for re-examination of proof of claim. [Refused.]

A. W. Tourgee, for creditor.

Merrimon, Fuller & Ashe, for assignee.

Opinion of Register:

This is a proof of debt by Harriet J. Foy, daughter and administratrix de bonis non of Elizabeth Smith, deceased, of Newbern, N. C., for the sum of two thousand two hundred and seventy dollars, the consideration of which was money deposited with the bank in 1861–'62, being the balance to her credit therein since June, 1862, evidenced by the deposit or to the petition thereof in bankruptcy. This claim as proven was formally audited, passed, and allowed by the register and assignee, under their respective hands, after the withdrawal of exceptions to the form and sufficiency of proof, to wit: August 13, 1875, and the debt was entered by the register upon the dividend list for payment. On the 18th of August, 1875, the assignee informed the register that he had found upon the daily cash-book of the bank an entry purporting to be a settlement, compromise, and discharge of said debt, to wit: the check of Mrs. Smith to the bank for two thousand two hundred and seventy dollars, and the payment by the bank to Mrs. Smith therefor of the sum of seven hundred and twenty-six dollars and forty cents, or thirty-two cents on the dollar of said debt. This entry bears date June 4, 1866, and has never been posted or transferred from the daily cash to the deposit ledger of the bank, and the last-named book, together with the sworn schedules in bankruptcy, still show due to Elizabeth Smith the sum of two thousand two hundred and seventy dollars, without payment, compromise, set-off, or counter-claim. The assignee insists that the entry in the daily cash-book balances this account, and that the proof must be expunged.

To this demand the claimant answers as set forth in the annexed certificate.

Mr. Chas. Dewey, the assignee in bankruptcy of the bank, was cashier of the bank throughout the entire period of this transaction, and familiar with all its details. When this entry was exhibited by the assignee to the register, and while inspecting it, the register interrogated Mr. Dewey, as to how such a compromise, so favorable to the bank, was effected. Mr. Dewey replied: "The bank prepared a statement showing that it was able to pay only thirty-two cents, and exhibited it to the creditors, whereby the compromise was effected." "Did the officers of the bank regard it as insolvent at that time?" "No; but the stay laws were in force, and we could not collect." "Did your statement exhibited to the creditors set forth these facts as a reason why you were only able to pay thirty-two per cent.?" "No; it just stated that the bank was only able to pay thirty-two cents on the dollar of its debt." The deposit ledger of the bank shows that many persons having balances due them on deposits made in 1861–'62, including the highest officers and directors of the bank, checked them out, dollar for dollar, before and after this alleged "settlement," (June 4, 1866), and if any discount or compromise was obtained thereon the books of the bank do not show it as in this case. A schedule of the names of some of these is hereto appended, marked "B," showing date of drawing out, and the amount of balance so withdrawn.

At the same period of this alleged compromise certain persons, having intimate relations with the bank, and facilities for knowing its financial condition, purchased large quantities of its bills, and presented them for payment. They received fifty-five cents on the dollar, conditioned in writing between the bank and them that the bank would pay to them such additional sum or sums as it might from time to time pay to any of its most favored creditors, together with interest from date. These certificates or agreements covered one hundred and nine thousand dollars, composed of bills purchased, and in part of ante-war deposits, and they have, since bankruptcy, been paid in full, with stipulated interest. A statement of these, showing names of the creditors, the amount, and, so far as is possible, the date of the stipulations, is hereto appended, marked "A." Mrs. Smith was an aged widow lady, residing at a point remote from the bank, to which she could have no access for information, the books and financial condition of which she was supremely ignorant, leaving her to depend solely upon the representations of its officers. The statement exhibited to her was an official statement prepared, says Mr. Dewey, the cashier, in effect, for the purpose of promoting compromises with its creditors. Mr. Dewey says, under oath: "The bank concluded they were solvent," but, they said in their "statement" to the creditors, "we can only pay thirty-two cents on the dollar of debt!" If that meant only for the present time, while the disability to sue and collect

the assets existed, then an acceptance of the thirty-two cents could not be construed into a compromise of the whole; it only meant: "We will pay you the balance when we are able; when the disability to sue ceases." But the bank did not inform their creditors that they were solvent, but in plain terms intimated the contrary in the "statement," the exhibition of which induced Mrs. Smith to accept a less sum of money for her debt than the debt amounted to. Such settlement between the bank and Mrs. Smith was obtained by misrepresentation, and was fraudulent, and void for want of consideration.

But the courts of North Carolina have gone beyond this, and held that the bare receipt of or agreement to receive a part of a debt in discharge of the whole is void for want of consideration. Bryan v. Foy, 69 N. C. 45; McKenzie v. Culbreth, 66 N. C. 534; Warren v. Skinner, 20 Com. 559; Hayes v. Davidson, 70 N. C. 573; Mitchell v. Sawyer, 71 N. C. 70; Wooten v. Sherrard, Id. 374; Love v. Johnston, 72 N. C. 415. Again, the check of Mrs. Foy on the bank was for two thousand two hundred and seventy dollars. The bank only paid seven hundred and twenty-six dollars and forty cents upon it, as admitted by all; therefore there remains due and unpaid upon her check the sum of one thousand five hundred and forty-three dollars and sixty cents. Since the date of this transaction the bank has been adjudicated bankrupt; paid all its known proven debt, amounting to upward of three hundred and seventy thousand dollars, with interest on the certificates heretofore described; all the costs of bankruptcy, including costs of collections, attorneys' fees, commissions, etc., amounting to several thousand dollars. It has compromised and compounded claims due the bank to a very large amount; has some thirty thousand dollars pending undetermined in the courts; a cash surplus of over thirty thousand dollars in the hands of the assignee, liable to two or three claims of this nature aggregating about eight hundred dollars, and to a claim for interest from adjudication of bankruptcy to final payment in full on debts proven. I am of the opinion that the alleged "compromise," if any, was fraudulent and void for want of consideration, and that the assignee should pay to the claimant the said sum of one thousand five hundred and forty-three dollars and sixty cents and interest from the time which all other creditors have received interest upon their claims allowed; the said sum of one thousand five hundred and forty-three dollars and sixty cents being the amount of said proven debt after deducting the sum actually paid upon her check, or order to the bank to pay the whole of said sum of two thousand two hundred and seventy dollars, together with ten dollars costs of this certificate. All of which is respectfully submitted.

A. W. Shaffer, Register.

BROOKS, District Judge. The deposition, or proof of debt, was filed in this case by Harriet J. Foy, as administratrix of Elizabeth Smith, on the 4th day of May, 1875, which was examined and approved as sufficient in form by the register. Subsequently, on the application of the assignee and certain creditors of the bank, the register reviewed his proceedings on said claim, under the provisions of the 34th rule, as amended, and again determined that the proofs were sufficient in form, and ordered that the claim be placed upon the dividend list for pro rata payment. To which ruling and order of the register the assignee and creditors excepted, and demanded that the questions arising on the exceptions, and the evidence taken, be certified to the district court. The certificate of the register and the evidence taken by him is before me, and other witnesses have been examined in behalf of each of the parties to this controversy. And I have been aided by able arguments of the counsel, and have now given the facts and the law involved in the case full consideration.

The facts are as follows: Elizabeth Smith, the intestate of the plaintiff, deposited with the bankrupt corporation—at a branch of that bank at Newbern—on the 14th of January, 1862, two thousand and ninety dollars, and on the 5th day of March following one hundred and eighty dollars, making two thousand two hundred and seventy dollars. That these amounts were entered to her credit by deposit, on the deposit ledger (a book kept by the bank), and also on the teller's journal (another book kept by the bank). That schedule A, No. 3, filed with the petition of the bankrupt corporation in this case, was made out from the deposit ledger, and upon that the only entries in Mrs. Smith's account were the credits before mentioned. On that book there was no charge or entry of payment made to her. Accordingly the sum so deposited was scheduled and reported as a debt due and owing by the bank; that on the teller's journal Mrs. Smith's account was balanced by a charge of her check on the 6th day of June, 1866, for the entire sum to her credit. The check so charged was produced on the trial, and the execution of it, by Mrs. Smith, was proved by the assignee in bankruptcy.

Mr. Dewey, the assignee, and Mr. Jones, were examined as witnesses. The former had been the cashier of the Bank of North Carolina, at the principal office at Raleigh, from a date anterior to the dates of the deposits mentioned, and Mr. Jones had been, from its origin, the cashier of the branch bank at Newbern. By Mr. Dewey it was shown that during the year 1866 the bank, not being able to redeem its circulation and pay other creditors by paying the full sums demanded, and as they were demanded, was then paying its debts by compromise, when demands were made, at the rate of twenty-five per cent. in gold—or its equivalent in the

then currency of the country. That, in the month of June, 1866, the equivalent of twenty-five cents in gold was thirty-two cents in national currency. That Mrs. Smith's check for two thousand two hundred and seventy dollars was sent to the principal bank at Raleigh (the branch at Newbern having been discontinued in 1862), through Mr. Jones, who had been the agent of the bank at Newbern since the discontinuance of the branch. That a check of the bank on a bank in New York for thirty-two per cent. of the deposit debt to the credit of Mrs. Smith was forwarded to Mr. Jones for Mrs. Smith, and that the balance, say one thousand five hundred and forty-three dollars and sixty cents, was charged to profit and loss, and the check charged to Mrs. Smith for the full sum on the teller's journal, which balanced her account, and through inadvertence no entry was made of this transaction in the deposit ledger. That a large amount of the bills of the bank was redeemed at that rate, and some of the depositors were settled with at the same rate. That when creditors of the bank applied for information they were informed that the bank was settling with its creditors at that rate. By the evidence of Mr. Jones it was shown that he was the agent and confidential friend of Mrs. Smith—who was considerably advanced in years; that at her request he drew the check and witnessed the execution of it by her, forwarded the same, and received the check for thirty-two per cent., mentioned by Mr. Dewey; that amount, in money, he paid to Mrs. Smith in satisfaction of her claim, at which settlement she appeared to be and expressed herself as satisfied. Mrs. Foy was examined in her behalf, and other witnesses were examined, by whom it was shown that, after the payment to Mrs. Smith, other claims against the bank were compromised and settled by the payment of higher proportions of the debt than thirty-two per cent.; that other creditors of the bank, who refused to accept the compromise offered, subsequently received the full amount of principal of their claims from the assets of the bank.

The questions of fact, to be determined in this case, are these: First. Whether the payment of thirty-two per cent. of the sum deposited by Mrs. Smith was tendered by the bank and received by her as and for payment and satisfaction of her entire claim, or was that sum tendered and accepted only as a partial or pro tanto payment on that debt? Secondly. If the sum paid was offered and accepted as a compromise and full settlement of the debt, then was the creditor induced to accept, as full payment, a sum so materially less than her demand, by reason of any fraud or deception practised on the part of the agents of the bank? I hold it to be clear that the whole sum due Mrs. Smith was not satisfied and discharged upon the payment to her of less than the amount due, unless the sum paid was both tendered and accepted as and for payment and satisfaction in full of her demands, and was so understood by both debtor and creditor at the time of this transaction. Referring to the testimony of Mr. Dewey and Mr. Jones, I am well satisfied that the payment made was offered and accepted as a compromise and full settlement of Mrs. Smith's claim against the bank, and that it was so understood at the time by both parties. There can be no doubt as to the purpose of the bank; and as to Mrs. Smith, her confidential friend, her agent, that one with whom she had trusted, for years, her money, says that the information upon which she acted came to her through him; that he received for and paid to her the sum paid, and that she appeared to be, and expressed satisfaction at the settlement. The opinion of the supreme court of North Carolina in the case of McKenzie v. Culbreth, 66 N. C. 534, and, following that, the case of Witherington v. Phillips, 70 N. C. 444, are relied upon by the creditor to show that any payment of a less sum in money than the whole sum due will not discharge the debtor. If that court intended to declare that when the amount paid by the debtor was tendered by him for compromise, payment, and for full satisfaction of the debt, and the same was accepted by the creditor without fraud on the part of the debtor, then I do not concur in that opinion.

We may be able to discover some reason in a requirement that an obligation evidenced by a writing under seal shall only be released or discharged by an instrument under seal. And, again, that obligations of a certain character shall only be binding upon the parties when the same shall be reduced to writing. In this age of progress, of the wonderfully increased as well as changed dealings between men, arising from trade and commerce, accelerated and multiplied as these have been by the wonderfully increased facilities for intercourse and trade, which were never enjoyed until within the last half century, it must appear as strange as it would seem to be hard upon the commercial man if the courts shall hold that he must pay, under all circumstances, to the last dollar, all his obligations, and even with the consent of his creditor, obtained without fraud on his part, he cannot obtain a discharge by paying less than the whole sum due. It should be remembered that this is no construction of any statutory provision of the law, but the declaration by a high court of a principle of the common law. An accepted construction of a statute law must and will stand until its force is lost by its own limitation, or the same shall be altered or repealed. Not so, however, with the common law, which is only common custom as applied to any given transaction not provided for by special legislation. These customs or laws are not applicable to changed customs or to obligations contracted under altogether different circumstan-

ces. It should be remembered, too, that this is a bankruptcy court, charged with the duty and vested with the power of administering justice upon the principles of equity between creditor and debtor whose interests may be brought within the jurisdiction of the court. The late bankrupt law [Act March 2, 1867; 14 Stat. 517] was said by some to be a system of itself. If so, it was a system of compromises and discharges, many of the provisions of which are of much more doubtful propriety and justice than a rule can be which will discharge a debtor from his obligation when he shall tender a part, less than the whole sum due, as full payment, and the creditor accepts such sum offered as full payment, without being induced to do so by any fraudulent act or declaration of the debtor.

But for the clear statement of the learned judge who delivered the opinion in the case of McKenzie v. Culbreth, supra, it would not be seen that the question now being considered was presented in that case, for the positions stated in the syllabus of that case will scarcely be denied. The statement of that case is concise, and as follows: The plaintiff claimed on a single bill. The defendant answered accord, etc., and, in support of this defence, offered a receipt given by the obligee for a less sum than the note called for. His honor instructed the jury that the legal effect of the receipt was only a payment to the amount specified in it, and operated only as a discharge of the note pro tanto. It is not strange that his honor, the presiding judge, upon such facts appearing, should have instructed the jury as he did. It is not stated that the sum paid by the debtor was tendered, by him or accepted by the creditor in compromise, settlement, and full payment of the obligation; and surely, unless such fact was found or admitted, there could be no presumption that the payment was so tendered and accepted, but rather the contrary. Upon that statement of the case it would appear strange if his honor had not so instructed the jury. His honor, in delivering the opinion of the appellate court, says: "The question presented is, whether a payment by the debtor and acceptance by the creditor of a less sum than is due upon a bond, as a payment of the whole, is a discharge of the obligation, so as to preclude the creditor from recovering the remainder of the bond." The difference between the case stated as reported and the statement of the question by his honor, it will be seen, is essential. Those who have had the acquaintance with that learned justice that it has been my privilege to enjoy will readily conclude that he was correct in his statement of the question presented, and will not, without hesitancy and regret, withhold their assent to the conclusion to which he arrived.

Nor was the question now being considered distinctly presented in the case of

Hayes v. Davidson, 70 N. C. 573, for in that case there had been no acceptance by the creditor of a less sum than the whole sum due. But it was only averred in the defendant's plea that the plaintiff had agreed with and promised the debtor that he would compromise the claim and take in full settlement a less sum than the whole amount due. The agreement was not one entered into with other creditors of the debtor; there was nothing whatever in this promise which distinguished it from a mere promise without any consideration whatever, either good or valuable. In the opinion of his honor, so manifestly correct, upon the question there presented, I only cannot concur in the approval given of the opinion in the case of McKenzie v. Culbreth, [66 N. C. 534.] The case of Bryan v. Foy, [69 N. C. 45] is not authority for the creditor in this case, for it is not only not alleged that there was any acceptance by the creditor; but, on the contrary, that the creditor refused to accept a sum less than the whole sum then due when tendered. The promise to accept, being nudum pactum, could not be enforced. Whether the motive prompting the creditor to refuse to comply with his promise is good or bad, in a moral sense, is not a question for the court. That will not alter the law applicable to a promise void for want of some good or valuable consideration. It is altogether a different principle that will control the conduct of a creditor when he agrees to accept, and does accept (without fraud, by word or in the conduct of the debtor), a less sum than the whole sum due, and then seeks to avoid both his agreement and results of his voluntary act.

It is seen that I do not rely upon any retrospective effect that may be claimed for the act passed by the legislature of North Carolina, Acts 1874–'75, c. 178. Nor, indeed, upon any force that may be attributed to that act. But it will appear by no means clear to the careful reader that the legislature did not intend by it to alter a well-established principle of the common law, by giving validity to and rendering binding upon a creditor a mere agreement with his debtor, to accept from him any part less than the whole of his debt in compromise, payment, and satisfaction of the debt. But when a creditor has not only agreed with his debtor to accept (with all his rights to seek and acquire information), but has received from him a less sum in full payment of his debt—and all this without fraud committed by the debtor—that such creditor should be bound by such agreement and acceptance is so manifestly supported by common sense, justice, and reason, that no statute is required to make it the law. It is but a principle of the common law. The learned counsel for the creditor, in their argument, laid much stress upon the authorities cited. Yet, in the carefully prepared brief filed by them,

these cases arc not even referred to. But they rest their case almost entirely upon the evidence, which they insist establishes fraud on the part of the agents of the bankrupt corporation, whereby, they say, the creditor was induced to receive the sum paid for the whole debt.

In my view of the testimony no fraud, by word or act, on the part of any agents of the bank, was committed which induced Mrs. Smith to accept the compromise offered; and while it is probably true that if she had correctly anticipated the ultimate results as to the assets of the bank, she would not then have sought or accepted such a settlement of her claim, the binding force of the settlement does not depend upon ultimate results or the correctness of the judgment exercised by her in that transaction. The fact is that the ultimate ability of the bank to pay a larger proportion, and, finally, to some creditors who "held off," the principal of their debts, was entirely due to compromises accepted by other creditors, as this was by Mrs. Smith—the results of suits against and in favor of the bank then pending, and collections about which, at the time of this settlement of this claim, no human foresight could be regarded as infallible. No understanding of the condition of the bank, however thorough, could enable any officer to say with reasonable certainty the proportion it would be able to pay. Nor would any desire to be truthful and correct on the part of these officers have exempted them from liability to err in any opinion they expressed. This claim is disallowed, and the register is directed to certify this order to the assignee.